**EXHIBIT 3**

GOvERNMENT OF THE DISTRICT OF COLUMBIA
METROPOLITAN POLICE DEPARTMENT
INVESTIGATIVE FILE REPORT

P.D. 854 rev 7/76

| FILE TITLE | DIVISION | BRANCH |
|---|---|---|
| **REPORT OF INVESTIGATION** Use of Service Pistol Investigation | OPR | FIT |
| | I.D. NO. | ARREST NO. |
| ☐ ACTIVE  ☐ CLOSED  ☐ REQUESTED ACTION OTHER | OTHER OFFICERS. Sgt. Brian Corrigan | COMPLAINT NO. 06-023-994 | CASE NO. FIT #S-F-05-075 |
| ☐ REQUESTED ACTION  ☐ OTHER FROM | | CROSS FILE ☐ ☐ ☐ ☐ ☐ | RELATED FILES |
| BY UNIT  Sgt. Ralph Wax  OPR/FIT | | | |
| DATE  February 22, 2006 | | | |
| REPORT RE: | | | |

Interview of Officer Edward Ford

On Wednesday, February 22, 2006, Second District Officer Edward Ford was interviewed by Force Investigation Team Sergeants Ralph Wax and Brian Corrigan regarding his use of service pistol incident that occurred at the intersection of West Virginia Avenue and Neal Street, Northeast. Present during the interview was Officer Ford's legal counsel Mr. Harold Martin. Prior to the interview Officer Ford was given Garrity warnings and volunteered to provide a statement. The following is a summary of Officer Ford's audio taped statement:

Officer Ford stated that he and his girlfriend, Ms. Jessica Smith-Haynie were in the process of renovating a house located at 1247 Oates Street, Northeast, preparing it for a home inspection. Officer Ford and Ms. Smith-Haynie were in the process of purchasing the house from the Brown family. As part of the purchase arrangement, Mr. Ignatius Brown, who had recently gotten out of prison, was allowed to reside in the premises while the repairs were being conducted and until the closing date. At some time about 12:00 PM, Thursday, February 16, 2006, Officer Ford arrived at the house and unloaded a ladder and some tools. It was then that he noted that his air compressor, several pneumatic nail guns, a table saw, and other process of carpentry tools were missing from with the house. Officer Ford checked the premises for evidence for a forced entry or break-in and found nothing. Officer Ford indicated that the only other person with keys to enter the house was Mr. Brown. Officer Ford stated that he spoke to an unidentified male in the alley who told him that he had seen Mr. Brown remove a saw from the premises and noted that it had the name "*Edward*" on it and that Mr. Brown was selling it. Also, a neighbor provided Officer Ford with a computer disk with digital photographs of Mr. Brown taking the property. Officer Ford then went to Ms. Smith Haynie's house on Neal Street, Northeast and called the police, who responded and took a report fro Theft-1. The officers then he a code-one radio assignment and left the scene. The reporting officer returned a short time later and provided Officer Ford with the report numbers. Officer Ford returned to work on the house with his remaining tools and noticed that the tools and ladder that he had just brought to the house were gone and Officer Ford prepared to report it to the officers.

Later that night, Officer Ford and Ms. Smith Haynie waited inside of 1247 Oates Street, Northeast, until Mr. Brown returned. At that time, the two confronted Mr. Brown, who admitted taking the property and said to give him time to get the tool back because he was not going back to jail. Officer Ford told Mr. Brown that he was going to get the police, to which Mr. Brown ran from the premises. Officer Ford pursued Mr. Brown for about two blocks towards Trinidad Street, Northeast. Several officers arrived on the scene and Mr. Brown got away and was not seen again. A Fifth District detective called Officer Ford the next day and told him that he was preparing an arrest warrant for Mr. Brown, but indicated that he would not be able to get it until the following Tuesday.

DISTRIBUTION:

SIGNATURE (Officer)

APPROVED (Name and title)

OFFICIAL USE ONLY

DATE 2/7/07

This report is the property of the Metropolitan Police Department
Neither it nor its contents may be disseminated outside the agency to which loaned.

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**METROPOLITAN POLICE DEPARTMENT**
INVESTIGATIVE FILE REPORT

P.D. 854A Rev. 4/74

## REPORT OF INVESTIGATION (Continuation)

| FILE TITLE | DATE | BRANCH |
|---|---|---|
| Interview of Officer Edward Ford | February 22, 2006 | |
| | | I.D. NUMBER |

On Tuesday, February 22, 2006, Officer Ford and Ms. Smith-Haynie had an appointment with a representative of *Geico Insurance* at 1:00 PM, to do a pre-inspection of the house for homeowner's insurance. Ms. Smith Haynie then had to go to *Urban Legal System* at 220 I Street, Northwest. After approximately thirty minutes, the two left and then stopped at the store on the corner of Florida and West Virginia Avenues, Northeast. There the two purchased some bread a six pack of beer, chip and snack cakes. As Officer Ford and Ms. Smith-Haynie were traveling northbound on West Virginia Avenue, Northeast, in Officer Ford's vehicle and were turning eastbound on Neal Street, Northeast. It was there that Officer Ford observed Mr. Brown walking southbound on the east sidewalk of West Virginia Avenue, Northeast. Officer Ford stopped his vehicle, backed it up and then parked it at the east curb of Virginia Avenue, Northeast.

Officer Ford and Ms. Smith-Haynie then confronted Mr. Brown about the stolen tools. Mr. Brown said that Officer Ford did not understand that it was not about him, it was about Mr. Brown. The two argued about the stolen property. Officer Ford told Mr. Brown to stay there until the police came and then he asked a woman on the porch in front 1309 West Virginia Avenue, Northeast, talking on a cellular telephone, to call the police. Officer Ford identified himself as a police officer, pulled out his badge and asked the woman to call the police and tell that that he was holing someone there. The woman said okay and then began dialing her telephone. At that time Mr. Brown began walking towards Officer Ford and then took off his black backpack and placed it on the lawn of an adjacent house and stated that he was not going back to jail. At the point when Mr. Brown apparently realized that the police were responding he started swinging at Officer Ford. Officer Ford related that he knew that when Mr. Brown removed his book bag, he was not going to be cooperative and was prepared to fight. According to Officer Ford, Mr. Brown began making karate type moves and was swinging his fists at him. Officer Ford attempted to calm Mr. Brown and told him to stay there until the police came. As Mr. Brown moved forward Officer Ford extended his arm in an attempt to keep him back. Officer Ford told Mr. Brown that he was getting to close to him and asked him to "*Go back!*" Mr. Brown was backing Officer Ford southbound down the sidewalk towards Neal Street, Northeast. Officer Ford described how he placed his right hand on his holstered service pistol and use his left hand to extend forward towards Mr. Brown's chest.

At the point immediately before Officer Ford stepped off of the sidewalk onto Neal Street, Northeast, Officer Ford drew his service pistol in response to Mr. Brown stating, "*Well you know what? Fuck it, if I've got to meet my maker, just fuck it!*" Officer Ford was asked what threatening behavior on the part of Mr. Brown warranted a display of deadly force. Officer Ford indicated that although he had not been struck, he explained that although he had not been struck, Mr. Brown was angry and physically threatening.

According to Officer Ford after he drew his service pistol Mr. Brown charged at him. Officer Ford called out to Mr. Brown, "*Just hold up! Just stop!*" while still extending his hand forward Mr. Brown had backed Officer Ford into the street where he held his service pistol against his chest with both hands. Mr. Brown then lunged towards the officer. It was then that was when the weapon discharged. Officer Ford why he had discharged his service pistol and he responded, "*It wasn't intentional. It really was not. It was just to detain him there. It really was not.*" Mr. Brown after being shot groaned and fell to the ground. Officer Ford stated that Mr. Brown never presented a weapon.

Officer Ford stated that Mr. Brown knew that he was a police officer. He related that for the past four months, after leaving work he would come over to 1247 Oates Street, Northeast, often in uniform, and work on the premises. ˆording to Officer Ford, Mr. Brown was often there when he was in uniform and added that he had paid Mr. ˌwn to help him. Mr. Brown was employed to help with odd jobs, painting and cleaning etc. Officer Ford stated

**OFFICIAL USE ONLY**

This report is the property of the Metropolitan Police Department
Neither it nor its contents may be disseminated outside the agency to which loaned

Page 2 of 2

GOVERNMENT OF THE DISTRICT OF COLUMBIA
METROPOLITAN POLICE DEPARTMENT
INVESTIGATIVE FILE REPORT

P.D. 854A Rev. 4/74

REPORT OF INVESTIGATION
(Continuation)

| FILE TITLE | DATE | BRANCH |
|---|---|---|
| Interview of Officer Edward Ford | February 22, 2006 | |
| | | I.D. NUMBER |

that he knew that Mr. Brown had service time in prison and that Ms. Smith-Haynie was a friend of the Brown family. Officer Ford was told by Ms. Smith Haynie that Mr. Brown's mother had been abused by the children.

Officer Ford stated that he did not have his issued ASP, O.C. Spray canister or handcuffs with him and indicated that his Sam Brown belt was inside of Ms. Smith Haynie's residence. Officer Ford showed investigators that he was wearing a clip-on type inside of the pants holster and stated that the holster had been approved by the Metropolitan Police Department range personnel and had been stamped. Officer Ford stated that he did not consume any alcohol and showed investigators that the six pack of beer had not been opened.

Officer Ford stated that he was very upset and indicated that he was sorry that the incident happened. Officer Ford stated that he did everything possible not to let it happen as it did. Officer Ford added that this incident profoundly affected his life.



**OFFICIAL USE ONLY**

This report is the property of the Metropolitan Police Department
Neither it nor its contents may be disseminated outside the agency to which loaned

Page 3 of 2