**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
Civil Division

TAKAISHA HENDERSON, *et al.*    )
    )
        Plaintiffs,      )
    )
v.    )    1:06CV00947
    )    Judge Kennedy
DISTRICT OF COLUMBIA, *et al.*    )
    )
        Defendants.    )

**PLAINTIFFS' OPPOSITION TO DEFENDANT
DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

Come now Plaintiffs, Takaisha Henderson, individually as next of kin, and as Personal Representative of the Estate of Ignatius Gary Brown ("Decedent Brown"), Plaintiff Terrell Brown ("Brown") and Plaintiff Shakia Holley ("Holley") (collectively "Plaintiffs"), by and through the undersigned counsel, and submit Plaintiffs' Opposition to Defendant District of Columbia's Motion for Summary Judgment. In support hereof, Plaintiffs state as follows:

### I. Factual Background

On February 15, 2006, Defendant Edward Ford, a police officer for the Metropolitan Police Department Second District, reported $1,300.00 worth of personal construction equipment stolen from within the residence located at 1247 Oates Street, NE, Washington, DC. (Exhibit #1 – Memorandum to Assistant Chief of Police Office of Professional Responsibility from UFRB Chairman.) Defendant Ford's girlfriend, Jessica Smith-Haynie, was in the process of purchasing the residence at 1247 Oates Street from Decedent Brown's mother. (Ford Dep. 16:6-12.) Defendant Ford and Ms. Smith Haynie were permitted access to the premises to complete renovations while Decedent Brown was still living at the residence. (Exhibit #1 – Memorandum to Assistant Chief of Police Office of Professional Responsibility from UFRB Chairman.) It was reported that Decedent Brown was responsible for the theft of the construction equipment. (Exhibit #1 – Memorandum to Assistant Chief of Police Office of Professional Responsibility

Memorandum to Assistant Chief of Police Office of Professional Responsibility from UFRB Chairman.)  It was Defendant Ford's belief that on February 21, 2006, a warrant was issued for the arrest of Decedent Brown for the theft of the equipment.  (Ford Dep. 38: 10-13.)

On February 22, 2006, Defendant Ford was driving northbound on West Virginia Avenue, NE at or near the 1300 block when he observed Decedent Brown walking on the sidewalk of the eastern side of the street.  (Ford Dep. 43: 1-15.)  Defendant Ford parked his vehicle and approached Decedent Brown to question him about the missing construction equipment.  (Ford Dep. 44: 8-19.)  When Defendant Ford approached Decedent Brown, Defendant Ford was of the belief that there was a warrant for Decedent Brown's arrest.  (Ford Dep. 45: 10-13.)  While conversing with Decedent Brown, Defendant Ford identified himself as a police officer to a nearby woman, showing his badge to her, and asked her to call the police.  (Ford Dep. 46: 7-47: 4.)  Decedent Brown took off the bookbag he was carrying and began kicking and punching in the direction of Defendant Ford.  (Ford Dep. 48:1-8; 49: 2-3.)  At no point during the altercation did Defendant Ford observe Decedent Brown holding weapon.  (Ford Dep. 51:15-17.)  Defendant Ford pushed Decedent Brown off of him twice while backing from him.  (Ford Dep. 50: 3-16.)  Defendant Ford then drew his service weapon and pointed it at Decedent Brown.  (Ford Dep. 51: 4-14.)  Decedent Brown lunged at Defendant Ford and Defendant Ford fired a shot at Decedent Brown, hitting him in the chest.  (Ford Dep. 53: 1-6.)

Decedent Brown was transported by ambulance to Washington Hospital Center.  (Exhibit #1 – Memorandum to Assistant Chief of Police Office of Professional Responsibility from UFRB Chairman.)  Deputy Medical Examiner A. Wayne Williams determined in a post mortem examination that Decedent Brown died from a single gunshot wound to the right side of his chest that perforated his heart.  (Exhibit #1 – Memorandum to Assistant Chief of Police Office of Professional Responsibility from UFRB Chairman.).  Deputy Medical Examiner Williams ruled the

death a homicide.  (Exhibit #1 – Memorandum to Assistant Chief of Police Office of Professional Responsibility from UFRB Chairman.)

## II. **Procedural History**

The Complaint in this matter was filed on May 19, 2006.  At a Status Conference on June 8, 2007 before this Honorable Court, the parties agreed to initially limit discovery to only those matters relating to the scope of Defendant Ford's employment as an MPD officer on February 22, 2006.  The parties further agreed that the issue of whether Defendant Ford was acting within the scope of his employment would be submitted to the Court in Motions for a determination as a matter of law on this issue.  The parties agreed that the Court's ruling on this issue would be binding.  The present Opposition sets forth Plaintiffs' argument in support of this issue.

## III. **Argument**

### a. **Defendant Ford Was Acting Within the Scope of His Employment as a Metropolitan Police Officer on or about February 22, 2006.**

An employer may be held liable for the acts of his employees that are committed within the scope of their employment.  Wilson v. Good Humor Corp., 757 F. 2d 1293, 1301-2 (D.C. Cir. 1985)(citing District of Columbia v. Davis, 386 A.2d 1195, 1203 (D.C. 1978)).  As noted by Defendant District of Columbia, the law of the locale where the employment relationship existed governs all determinations concerning the scope of that employment.  Majano v. United States, 469 F.3d 138, 141 (D.C. Cir. 2006)(citing Kimbro v. Velten, 30 F.3d 1501, 1506 (D.C. Cir. 1994)).  In the District of Columbia, the general rule for determining if an employee is acting within the scope of his employment is:

> [W]hatever is done by the employee in virtue of his employment and in furtherance of its ends is deemed by the law to be an act done within the scope of his employment, and that in determining whether the servant's conduct was within the scope of his employment, it is proper to inquire whether he was at the time engaged in serving his master.

Penn Central Transportation Co. v. Reddick, 398 A.2d 27, 29 (D.C. 1978)(quoting 57 C.J.S.

Master and Servant § 570d (2), at 303 (1948)).  Additionally, an act is deemed not within the

scope of employment only if it is done for solely for employee's personal purposes.  District of

Columbia v. Davis, 386 A.2d 1195, 1203 (1978).  "[U]nless the tort occurred at least in part as a

result of a desire to serve the employer, the employer is not liable."  Id. (citing Park Transfer Co.

v. Lumbermens Mutual Casualty Co., 142 F.2d 100 (1944).

On February 22, 2006, Defendant Ford was acting within the scope of his employment as

a Metropolitan Police Officer in his interactions with Decedent Brown.  It is clear from Defen-

dant Ford's deposition testimony that he confronted and detained Decedent Brown in an effort to

ultimately effectuate the arrest of Decedent Brown based on his personal knowledge of the war-

rant that he believed existed for Decedent Brown.  In his deposition, Defendant Ford testified as

follows:

> A.:    My intention was to detain him there until a uniform officer showed up on
> the scene to have that uniform officer run a 1029.
>
> Q.:    When you say a 1029, what is that?
>
> A.:    That is a warrants check, criminal check or however you want to put it.

(Ford Dep. 45: 14-17.)  Defendant Ford's testimony demonstrates that he was acting in virtue of

his employment as a Metropolitan Police Officer and in furtherance of those ends by trying to

bring about the arrest of an individual for which he believed there was a felony arrest warrant.

During the course of his interaction with Decedent Brown on February 22, 2006, Defen-

dant Ford identified himself to both Decedent Brown and an onlooker as a police officer.  In his

deposition, Defendant Ford testified as follows:

> A.     I asked the young lady that was up on the porch to call the police after I
> showed her my badge and I verbally told her I was a police officer.
>
> Q.     Is this before or after you approached Mr. Brown?

A.    This is after.

Q.    So while you were talking to Mr. Brown you saw a woman on the porch?

A.    Yes.

Q.    And this is while you were on West Virginia Avenue?

A.    Yes.

Q.    And at that time you pulled out your badge and showed her your badge?

A.    Yes, I verbally told her, I said, "Excuse me, ma'am, is it possible you can call the police?  I'm a police officer."  I reached into my pocket, I pulled out my badge and I visually showed her by badge and my ID."

(Ford Dep. 46:7- 47:4.)  The statements of both Ms. Jessica Smith-Haynie and Ms. Nancy Jackson taken by the Metropolitan Police Department in connection with their investigation of this incident confirm that Defendant Ford identified himself as police officer.  (Exhibit #2 – Memorandum to Assistant Chief of Police Office of Professional Responsibility from UFRB Chairman.)

In District of Columbia v. Davis, 386 A.2d 1195 (1978), the District of Columbia Court of Appeals addressed the precise issue of whether a Metropolitan Police Officer was acting within the scope of his employment.  In this case, Mr. Davis brought suit against Officer Howard and the District of Columbia for injuries he sustained when the officer accidentally discharged his service revolver while unholstering it.  Id.  This incident occurred in the early hours of the morning at a small party in which Mr. Davis and the officer were both present.  Id. at 1197-98.  The officer testified that he always wore his service weapon, even when he was off duty and that he was required to do so by departmental regulations in order to be available for duty at all times.  Id. at 1201-2, n.7.  The Court of Appeals held that Officer Howard was acting within the scope of employment and, as such, the District of Columbia could be held liable for the officer's negligent actions.  The Court noted:

> Here Officer Howard was carrying a weapon because he was required to do so. By wearing it at all times, he was furthering his employer's function of maintaining public order…The weapon was necessary to his carrying out the mandate of his employer that he be in a constant state of readiness to take official action. The act of unholstering it was surely conduct incidental to that authorized.

Id. at 1203. The Court also noted the following factors that are to be considered when determining if an individual was acting within the scope of their employment: (1) whether the employer at the time had the right to control and direct the employee in the performances of his work; (2) whether the employee's state of mind at the time the act is committed is material, though not conclusive. Id. When analyzing Officer Howard's state of mind at the time of the incident, the Court noted that "Officer Howard's testimony on cross-examination indicated his awareness of the fact that he was, for certain purposes, effectively on duty at all times." Id.

In the case at bar, Defendant Ford has provided testimony even more direct than that provided by Officer Howard in the Davis case. Defendant Ford testified that his state of mind at the time was such that he believed he was acting in his capacity as a Metropolitan Police Officer. (Ford Dep. 52: 15-21.) Defendant Ford testified as follows:

> Q.    When you got out of your vehicle to go speak to Mr. Brown, was it your state of mind that you were doing so as a metropolitan police officer?
>
> A.    Yes…

(Ford Dep. 45: 14-17.)

> Q.    When you pulled out your weapon did you do so in your mind as a member of the Metropolitan Police Department?
>
> A.    Yes, from the moment I stopped [Decedent Brown] and I showed him my badge and requested an officer to the scene, I was acting in the capacity of a police officer.

(Ford Dep. 52: 15-21.) Defendant Ford's deposition testimony on his state of mind at the time is supported by his actions on February 22, 2006, as noted above, when he identified himself to an

uninvolved bystander as a police officer and displayed his MPD badge to her.  (Ford Dep. 46:7-47:4.)

Similar to Defendant Ford, Officer Howard was also off duty at the time of the shooting and yet was still found to be acting within the scope of his employment as an MPD officer.  With regards to Officer Howard's off-duty status, the Court noted that "[t]hough technically within the off-duty classification, Officer Howard was engaged in the execution of a function specifically prescribed by the city carrying a gun and the performance of the requirement, thought negligent, was nevertheless in furtherance of the interest of the employer." Id. at 1205.  On February 22, 2006, Defendant Ford too was engaged in the execution of a function prescribed by the city in his position as an MPD officer, specifically attempting to detain an individual so as to perform a warrants check in furtherance of the interest of his employer.

Defendant Ford's actions on February 22, 2006 as well as his subsequent testimony clearly establish that he was acting within the scope of his employment as an MPD officer on that day.  As such, this Court should deny Defendant District of Columbia's Motion for Summary Judgment and find that as a matter of law that Defendant Ford was acting within the scope his employment as an MPD officer on February 22, 2006.

**b.  There is Insufficient Evidence to Support Defendant District of Columbia's Allegation that Defendant Ford was Acting in a Personal Capacity in His Interactions with Decedent Brown on February 22, 2006.**

Defendant District of Columbia contends that "[o]n the day of the shooting, when Officer Ford approached Mr. Brown, he did not do so in his capacity as a police officer."  (Def.'s Mot. Summ. J. 17.)   In making this assertion, Defendant District of Columbia relies on two sentences Defendant Ford uttered on the day of the incident to imply that Defendant Ford was acting in further of a personal vendetta.  Id.  Specifically, Defendant District of Columbia relies on Defendant Ford's statements to Mr. Brown in which he said: "Why did you steal from me?" and

"Gary, I want to talk to you about the tools, it's okay, I talked to your brother." (Def.'s Mot. Summ. J. 17.) Yet, Defendant District of Columbia's contention directly contradicts the remainder of Defendant Ford's testimony in which he repeatedly testified that he was acting in his capacity as an MPD officer on February 22, 2006. (Ford Dep. 45: 14-17; 52: 15-21.)

As noted above, to establish that Defendant Ford was not acting within the scope of his employment, Defendant District of Columbia must show that he was acting solely for his own personal purposes. District of Columbia v. Davis, 386 A.2d at 1203. Defendant Ford's testimony demonstrates that he was not acting solely in furtherance of his own personal purposes. Thus, Defendant District of Columbia's reliance on Defendant Ford's two statements, taken in light of the remainder of his testimony, is insufficient to meet the standards that support a finding as a matter of law that Officer Ford was not acting within the scope of his employment.

Defendant District of Columbia also points to Defendant Ford's failure to confront Decedent Brown about possible drug paraphernalia found at 1247 West Virginia Avenue to suggest that he wasn't acting in his capacity as an MPD officer when he confronted Decedent Brown regarding the stolen tools. (Def.'s Mot. Summ. J. 17.) Defendant District of Columbia further cites Defendant Ford as stating: "It wasn't my responsibility to probe and see if [Mr. Brown] was on drugs or if [Mr. Brown] had anything illegal." (Ford Dep. 88: 16-18.) However, this is a mischaracterization of Defendant Ford's testimony. In making this statement, Defendant Ford was explaining how the drug paraphernalia was brought to his attention, and clarifying that he did not find the drug paraphernalia initially. Defendant Ford testified as follows:

> Q.    What if anything did you do when you saw the drug paraphernalia in the bedroom?
>
> A.    It was brought to my attention. I didn't actually go up. I wasn't probing. It wasn't my responsibility to probe and see if he was on drugs or if he had anything illegal. My whole purpose there was to put this house in shape so it would pass an inspection. It was brought to my attention by my girlfriend and its just drug paraphernalia, it was not like, it was basically a crack pipe and other things that

drew you to say wait a minute, this is using person or he may have somebody in the house with him that may be using drugs, but that is as far it went.

(Ford Dep. 88: 13-89: 5.)  Defendant Ford further testified that he did not confront Decedent Brown about the drug paraphernalia because he was unable to link the items to Decedent Brown. Defendant Ford testified that another individual, possibly Decedent Brown's cousin or nephew, had been living in the house just prior to the incident.  (Ford Dep. 89: 9-11.)  Thus, Defendant Ford was not able to positively link the drug paraphernalia to Decedent Brown and accordingly, never confronted him about it.

Additionally, Defendant Ford's belief that an arrest warrant for the missing tools had been issued is an important distinction between the incident giving rise to the case at bar and Defendant's Ford's failure to confront Decedent Brown regarding the drug paraphernalia.  Prior to February 22, 2006, Defendant Ford believed that there was a warrant out for the arrest of Decedent Brown in relation to the stolen tools.  (Ford Dep. 45: 10-13.)  In contrast, a warrant was never issued for the arrest of Decedent Brown in relation to the drug paraphernalia discovered at 1247 West Virginia Avenue and Defendant Ford never had a reason to believe that a warrant would be issued for the arrest of Decedent Brown in relation to the drug paraphernalia.  Defendant District of Columbia's reliance on Defendant Ford's failure to confront Decedent Brown about the drug paraphernalia does not show that Defendant Ford was acting solely in furtherance of his own personal purposes.  Defendant District of Columbia's motion should be denied.

Defendant District of Columbia further contends that Defendant Ford was not acting in his capacity as an MPD officer on February 22, 2006 because "his actions were in direct violation of the District's Municipal Regulations and MPD General Orders."  (Def.'s Mot. Summ. J. 18.)  Specifically, Defendant District of Columbia argues that Defendant Ford violated Title 6A, DCMR, Chapter 2, § 200.5 by failing to obey an order emanating from a superior officer when,

on February 16, 2006, Sergeant Colin Hall told Defendant Ford to allow the investigators to handle the investigation of the theft of Defendant Ford's tools. (Hall Aff. 1.)

However, Sergeant Hall's comment to Defendant Ford did not constitute an order under Title 6A, DCMR, Chapter 2, § 200.5 that prohibited Defendant Ford from approaching Decedent Brown. Sergeant Hall's affidavit indicates that he only told Defendant Ford to allow the investigators to handle the investigation of the stolen tools. (Hall Aff. 1.) Defendant Ford testified in his deposition that Sergeant Hall said "that the officers on the scene … could not find Mr. Brown and just leave it alone at that time." (Ford Dep. 36:6-8.) Sergeant Hall did not prohibit Defendant Ford from any and all involvement in the investigation. Sergeant Hall did not instruct Defendant Ford to refrain from any and all contact with Decedent Brown. Sergeant Hall merely told Defendant Ford to permit the investigators to handle the investigation. Defendant Ford did not impede upon or hinder the investigators from handling the investigation of the stolen tools and Defendant Ford did not violate Title 6A, DCMR, Chapter 2, § 200.5 by approaching Decedent Brown on February 22, 2006. This was confirmed by Sergeant Ralph Wax who, as a member of the Metropolitan Police Department's Force Investigation Team, investigated the incident that occurred on February 22, 2006 and drafted the Final Investigative Report, detailing his findings regarding the incident. Testifying as both a fact witness and a 30 (b)(6) corporate representative witness on behalf of Defendant District of Columbia, Sergeant Wax stated in his deposition that Defendant Ford did not violate any MPD regulations by approaching Decedent Brown on February 22, 2006. (Wax Dep. 7:4-13; 25:11-16.) Sergeant Wax testified as follows:

A.    Totality of events carried into the decision, looking into that, I don't believe [Defendant Ford] approaching the subject was a violation of departmental policy.

Q.    It was not a violation?

A.    Not that I believe…

10

(Wax Dep. 25:11-16.)

Q.    Up until the time he actually discharged his weapon, did Officer Ford, to your knowledge, violate any code regulations, departmental policies or anything of that nature?

A.    No.

(Wax Dep. 28: 18-29:1.)  Defendant Ford also testified in his deposition that he did not believe that Sergeant Hall had issued an order to him prohibiting him from approaching Decedent Brown.  Defendant Ford testified as follows:

A.    And you were told, were you not, by the sergeant to let the detective handle your investigation?

Q.    I was not ordered… This is an order.  Those words were never spoken as far as interfering with an investigation case.  If I was anyplace else in this city and I stopped and the person had a warrant, I would not be interfering, I would be executing that warrant, I would be bringing that person in for a warrant that was issued for their arrest.  There was no order given…

(Ford Dep. 121: 1-17.)

Q.    So is it your testimony that although the sergeant told you to let his detective handle the investigation into the alleged theft of your tools, as far as you're concerned that was not an order?

A.    [Sergeant Hall's] words were "We cannot find this person.  We'll just leave it alone and let the detectives do what they have to do."  There was never spoken words saying that, "Hey, leave this alone, I'm ordering you to leave this alone.  Do not pursue it."  There were never, ever, ever those words spoken...

(Ford Dep. 122: 3-14.)  From the above testimony, it is apparent that Defendant Ford was not acting in violation of Title 6A, DCMR, Chapter 2, § 200.5 by approaching Decedent Brown on February 22, 2006.

Defendant District of Columbia also alleges Defendant Ford violated General Order RAR-201.36 by allowing his "personal feeling, prejudices, political beliefs, aspirations, animosities, or friendships to influence [his] decisions."  (Def.'s Mot. Summ. J. 18.)  As delineated at length above, Defendant Ford was acting in his capacity as an objective MPD officer when he

approached Decedent Brown on February 22, 2006. Defendant Ford sought only to detain an individual for whom he believed an arrest warrant was issued. Defendant Ford was not permitting his personal feelings, prejudices, political beliefs, aspirations, animosities, or friendships to influence his decisions when he approached Decedent Brown.

It is a well-established principle in the District of Columbia that an employer may be held liable for the negligence of an employee even if at the time the negligent act is committed the employee is acting in violation of his employer's orders. District of Columbia v. Davis, 386 A.2d 1195; Meyers v. National Detective Agency, Inc., 281 A.2d 435 (D.C. 1971); Schweinhaut v. Flaherty, 49 F.2d 533, cert. denied, 51 S.Ct. 656, 283 U.S. 864, 75 L.Ed. 1468 (1931). Even if it were determined that Defendant Ford was acting in violation of the District's Municipal Regulations and MPD General Orders on February 22, 2006, this does not establish that Defendant Ford was not acting within the scope of his employment as an MPD Officer. Thus, Defendant District of Columbia's Motion for Summary Judgment should be denied and this Court should determine as a matter of law that Defendant Ford was acting within the scope of his employment on February 22, 2006.

    c.  **The Case at Bar is Distinguishable From the Cases Relied Upon by Defendant District of Columbia.**

Defendant District of Columbia relies on the case District of Columbia v. Coron, 515 A.2d 435 (D.C. 1986) in support of their argument that Defendant Ford was acting within the scope of his employment on February 22, 2006. However, the Coron case is factually distinguishable from the case at bar. In Coron, an off-duty officer had just left a private party and was on his way to a bar when he assaulted a pedestrian after the pedestrian kicked his car. In determining that the officer was not acting within the scope of his employment, the Court found that he was engaged in a purely personal venture. The Court also noted that "from the moment [he]

stopped his automobile he did not handle the situation in a manner expected of a police officer…
[and his] entire behavior during this incident reflected that of an individual bent on personal
vengeance for a perceived personal affront." Id. at 438.

The most important difference between Coron and the case at bar is that Defendant Ford
handled himself in manner expected of a police officer when he first approached Decedent
Brown.  Defendant Ford displayed his badge and identified himself as police officer.  He asked
an onlooker to call 911.  These are the actions one would expect from a police officer.  Defen-
dant Ford did not act like an individual bent on personal vengeance for a perceived personal af-
front.  For this reason, Defendant District of Columbia's motion should be denied.

Another notable difference between Coron and the case at bar is again the perceived pres-
ence of an arrest warrant.  As explained above, Defendant Ford believed there to be a felony ar-
rest warrant issued for Decedent Brown in relation to the missing tools prior to approaching him
on February 22, 2006.  In contrast, the officer in Coron had no reason to believe that a warrant
had been issued for the arrest of the pedestrian.  In fact, very little time elapsed between when
the officer first observed a possible violation (i.e. the pedestrian kicking the officer's car) and
when the officer confronted the pedestrian regarding this possible offense.  This further supports
the finding in Coron that the officer was not acting in his capacity as a police officer but rather
was acting as an individual bent on personal vengeance for a perceived personal affront.

Defendant District of Columbia also relies on Jordan, et al. v. Medley, et al., 711 F.2d
211 (D.C. 1983).  In the Jordan case, Plaintiffs Mrs. Jordan and Mr. Graham were the tenants of
an apartment that was owned by Defendants Mr. and Mrs. J.M. Medley.  Id.  The Medley's son,
Defendant Larry Medley assisted his parents with the management of the apartment building in
which the Plaintiffs resided.  Id.  The cause of action brought by the Plaintiffs in this case arose
from an incident in which Defendant Larry Medley and his father personally delivered written

notification to Mrs. Jordan that her rent would be increasing.  Id. at 212.  Upon receipt of the no-
tification, an argument ensued between Mrs. Jordan and Larry Medley.  Id. at 213.  Shortly
thereafter, Larry Medley and his father left the premises only to return approximately one hour
later.  Id.  Upon their return, the argument resumed between Larry Medley and Mrs. Jordan, who
was accompanied by her nephew.  Id.  There was conflicting evidence presented at trial as to
whether Mrs. Jordan smacked Larry Medley in the face and/or pushed his finger out of her face
during the course of the argument.  Id.  Larry Medley retrieved his semi-automatic rifle from his
truck parked near the premises, loaded it with one clip of ammunition and resumed his argument
with Mrs. Jordan and her nephew.  Again, there was conflicting evidence as to whether Larry
Medley brandished the rifle or pointed it at Mrs. Jordan and her nephew.  Id.

> The D.C. Circuit Court found that the trial court had erroneously instructed the jury that:
>
> the employee, Larry Medley, was engaged upon the business of the employers,
> J.M. and Kathleen Medley, at the time of the incident.  Therefore, the employers
> are responsible for any negligent acts or omissions of their employee, although
> the employers are entitled to the benefit of any defense which is available to the
> employee.

Id. at 214-15.  The Court found that this instruction amounted to a directed verdict for the Plain-
tiffs.  Id. at 215.

Defendant District of Columbia's reliance on this case is misplaced.  The Court in John-
son held that the issue of whether Larry Medley was acting within the scope of his employment
as a residential manager was an issue that was properly left to the province of the jury.  Id. at
215-16.  The Court did not find as a matter of law that Larry Medley was not acting within the
scope of his employment.  Therefore, Defendant District of Columbia's reliance on Johnson for
the proposition that Defendant Ford was not acting within the scope of his employment as an
MPD officer on February 22, 2006 is misplaced.

Moreover, <u>Johnson</u> is factually distinguishable from the case at bar.  In <u>Johnson</u>, Larry Medley carried and brandished a semi-automatic rifle.  As the Court noted, "[t]o be within the scope employment, the conduct of the servant must be of the same general nature as that authorized or incidental to the conduct authorized."  <u>Id.</u> at 213(citing <u>Presley v. Commercial Credit Corp.</u>, 177 A.2d 916, 918 (D.C.Mun.App. 1962)).  Carrying and brandishing a semi-automatic rifle is clearly not of the same general nature as that authorized or incidental to the conduct of a residential manager of an apartment building.  In contrast to <u>Johnson</u>, Defendant Ford was carrying a service weapon while attempting to detain an individual for whom he believed there was a felony arrest warrant.  Not only is carrying a service weapon of the same general nature as that authorized or incidental to the conduct of an MPD officer, but it was required by the MPD General Orders that an officer carry his service weapon at all times back in February of 2006.  (Ford Dep. 62:3-5)(Wax Dep. 37:14-38:15).  Additionally, attempting to detain an individual for whom it is believed there is a felony arrest warrant is of the same general nature as that authorized or incidental to the conduct of an MPD officer.  Thus, Defendant District of Columbia's Motion should be denied.

**WHEREFORE,** Plaintiffs respectfully request that the Court deny Defendant District of Columbia's Motion for Summary Judgment and determine as a matter law that Defendant Ford was acting within the scope of his employment as an MPD officer on February 22, 2006.

Dated: May 23, 2008                                    RESPECTFULLY SUBMITTED,

/S/

_____

Adam R. Leighton, Esq.
COHEN & COHEN, P.C.
1821 Jefferson Place, NW
4th Floor
Washington, D.C. 20036
(202) 955-4529
arl@cohenandcohen.net
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
Civil Division

TAKAISHA HENDERSON, *et al.*   )
              )
     Plaintiffs,   )
              )
v.            )  1:06CV00947
              )  Judge Kennedy
DISTRICT OF COLUMBIA, *et al.*  )
              )
     Defendants.  )

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT
DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

   COME NOW Plaintiffs, by and through the undersigned counsel, and respectfully refer this Court to the following points of law and authorities in support of Plaintiffs' Opposition to Defendant District of Columbia's Motion for Summary Judgment:

   1.  <u>Wilson v. Good Humor Corp.</u>, 757 F. 2d 1293, 1301-2 (D.C. Cir. 1985).

   2.  <u>District of Columbia v. Davis</u>, 386 A.2d 1195, 1203 (D.C. 1978).

   3.  <u>Majano v. United States</u>, 469 F.3d 138, 141 (D.C. Cir. 2006).

   4.  <u>Kimbro v. Velten</u>, 30 F.3d 1501, 1506 (D.C. Cir. 1994).

   5.  <u>Penn Central Transportation Co. v. Reddick</u>, 398 A.2d 27, 29 (D.C. 1978).

   6.  57 C.J.S. Master and Servant § 570d (2), at 303 (1948).

   7.  <u>Park Transfer Co. v. Lumbermens Mutual Casualty Co.</u>, 142 F.2d 100 (1944).

   8.  Title 6A, DCMR, Chapter 2, § 200.5.

   9.  General Order RAR-201.36.

   10.  <u>Meyers v. National Detective Agency, Inc.</u>, 281 A.2d 435 (D.C. 1971).

11. <u>Schweinhaut v. Flaherty</u>, 49 F.2d 533, cert. denied, 51 S.Ct. 656, 283 U.S. 864, 75 L.Ed. 1468 (1931).

12. <u>District of Columbia v. Coron</u>, 515 A.2d 435 (D.C. 1986).

13. <u>Jordan, et al. v. Medley, et al.</u>, 711 F.2d 211 (D.C. 1983).

14. <u>Presley v. Commercial Credit Corp.</u>, 177 A.2d 916, 918 (D.C.Mun.App. 1962).

Dated:  May 23, 2008                          RESPECTFULLY SUBMITTED,


                                                      /S/
                                           _____
                                           Adam R. Leighton, Esq.
                                           COHEN & COHEN, P.C.
                                           1821 Jefferson Place, NW
                                           4th Floor
                                           Washington, D.C. 20036
                                           (202) 955-4529
                                           arl@cohenandcohen.net
                                           Attorney for Plaintiff

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
Civil Division

| | | |
|---|---|---|
| TAKAISHA HENDERSON, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:06CV00947 |
| | ) | Judge Kennedy |
| DISTRICT OF COLUMBIA, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

**UPON CONSIDERATION** of Plaintiffs' Opposition to Defendant District of

Columbia's Motion for Summary Judgment, it is this ___ day of _____, 2008 by the

United States District Court for the District of Columbia

**ORDERED**, that Defendant's Motion for Summary Judgment be and hereby is

DENIED; and it is further

ORDERED, that, as a matter of law, Defendant Ford was acting within the scope of his

employment as a MPD officer on February 22, 2006.


_____
Judge, United States District Court
District of Columbia

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2008, I served a copy of *Plaintiffs' Opposition to Defendant District of Columbia's Motion for Summary Judgment*, the accompanying Memorandum of Points and Authorities in Support thereof, and a proposed Order, by first-class mail, postage prepaid, upon the following:

David Jackson, Esq.
Office of the Attorney General
441 Fourth Street, N.W., 6 South
Washington, DC  20001

/S/

_____

Adam R. Leighton

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
Civil Division

| | | |
|---|---|---|
| TAKAISHA HENDERSON, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:06CV00947 |
| | ) | Judge Kennedy |
| DISTRICT OF COLUMBIA, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE

 In support of the Plaintiffs' Opposition to Defendant District of Columbia's Motion for Summary Judgment, Plaintiffs herein submit a statement of material facts to which there is no genuine, and states as follows:

1. On February 22, 2006, Defendant Ford was employed by the District of Columbia as a Metropolitan Police Officer. (Ford Dep. 8-15.)

2. On February 22, 2006, Defendant Ford was carrying his Metropolitan Police Officer badge and service weapon. (Ford Dep. 46, 50, 51, 62.)

3. The regulations of the Metropolitan Police Department required off-duty officers to carry their service weapon, ID and badge at all times. (Ford Dep. 62.)

4. On February 22, 2006, Defendant Ford confronted Decedent Brown about stolen property. (Ford Dep. 44: 8-19.)

5. Defendant Ford was aware that there was a felony warrant for the arrest of confronted Decedent Brown when he confronted him. (Ford Dep. 45: 10-13.)

6. When Defendant Ford confronted Decedent Brown, in his state of mind, he was acting as Metropolitan Police Officer. (Ford Dep. 45: 14-17.)

7. While confronting Decedent Brown, Defendant Ford identified himself as a police officer to onlooker Nancy Jackson, showing his badge to her, and asking her to call the police. (Ford Dep. 46: 7-47: 4.)

8. At no point during the confrontation did Defendant Ford observe Decedent Brown holding weapon. (Ford Dep. 51:15-17.)

9. When Defendant Ford pointed his service pistol at Decedent Brown, in his state of mind, he was acting as Metropolitan Police Officer. (Ford Dep. 52: 15-21.)

10.     Defendant Ford shot Decedent Brown in the chest with his Metropolitan Police De-
        partment service pistol.  (Ford Dep. 53: 1-6.)

11.     Deputy Medical Examiner Williams determined in a post mortem examination that
        Decedent Brown died from a single gunshot wound to the right side of his chest that
        perforated his heart.  (Exhibit #1 – Memorandum to Assistant Chief of Police Office
        of Professional Responsibility from UFRB Chairman.)

12.     Deputy Medical Examiner Williams ruled the death of Ignatius Gary Brown a homi-
        cide.  (Exhibit #1 – Memorandum to Assistant Chief of Police Office of Professional
        Responsibility from UFRB Chairman.)


Dated:  May 23, 2008                              RESPECTFULLY SUBMITTED,


                                                        /S/
                                        _____
                                        Adam R. Leighton, Esq.
                                        COHEN & COHEN, P.C.
                                        1821 Jefferson Place, NW
                                        4th Floor
                                        Washington, D.C. 20036
                                        (202) 955-4529
                                        arl@cohenandcohen.net
                                        Attorney for Plaintiff