# Exhibit 1




**Use of Force Review Board**
801 Shepherd Street, N.W. Suite 340, Washington D.C., 20011 202-246-1555

## MEMORANDUM

**TO:** Assistant Chief of Police
Office of Professional Responsibility

**FROM:** UFRB Chairman

**SUBJECT:** Use of Force Review Boards Findings and Recommendations
FIT Case Number S-F-06-075/IS Number 06-900005
2nd District Officer Edward Ford

On April 9, 2007, the Use of Force Review Board (UFRB) reviewed the use of force incident involving Officer Edward Ford of the Second District. After careful consideration, the board concluded the following:

- The Use of Force (Service Pistol) was, **NOT Justified, NOT Within Departmental Policy**

The UFRB has determined that Officer Ford was in violation of the following:

**VIOLATION:** General Order 901.04, Part III. Rules and Regulations

A. Use of Force Continuum, #2:

2. In determining what level of force to use, it is important to consider the seriousness of the crime, the level of threat or resistance presented by the suspect, the imminence of danger, and the suspect's mental state. Members shall use only the minimum level of force needed to obtain control that an objectively reasonable officer would use in light of the circumstances.

**VIOLATION:** General Order 901.7, Part B, 1, and District of Columbia Municipal Regulation Title 6A, Part 207.2 which states, in part:

No members of the Metropolitan Police Department shall discharge a firearm in the performance of police duties except under the following circumstances:

Part A: "To defend him/herself or another from an attack which the officer has reasonable cause to believe could result in death or serious bodily injury;"

FORD, Edward
DDRO

Part B: "To effect the arrest or to prevent the escape, when every other means of effecting the arrest or preventing the escape has been exhausted, of a person who has committed a felony in the police officer's presence, or when a felony has been committed, and the police officer has reasonable grounds to believe the person that he or she is attempting to apprehend committed the felony; Provided, that the felony for which the arrest is sought involved an actual or threatened attack which the officer has reasonable cause to believe could result in death or serious bodily injury; and provided further, that the lives of innocent persons will not be endangered if the officer uses his or her firearm;

VIOLATION:    General Order 901.7, Part V.D 2, which states in part,

Part D:    "Authorized Use of Deadly Force"

(2)    To defend himself/herself or another from an actual or threatened attack that is imminent and could result in death or serious bodily injury.

Specifically, On Wednesday, February 15, 2006, Second District Officer Edward Ford reported the theft of more than $1,300.00 in construction equipment from within 1247 Oates Street, Northeast. Officer Ford and his girlfriend Forensic Science Division, Firearms and Tool Mark Examiner Ms. Jessica Smith-Haynie were in the process of purchasing 1247 Oates Street, Northeast, from the Brown Family. During the purchasing process, the Brown Family gave Officer Ford and Ms. Smith-Haynie access to the residence to begin renovations, while fifty-one year old Mr. Ignatius Brown continued to reside within the address. Officer Ford found that Mr. Brown had taken the construction equipment, and when the officer confronted Mr. Brown, he admitted to the theft and fled the residence after stating that he could not go back to jail.

On Wednesday, February 22, 2006, at approximately 3:00 P.M., Officer Ford, who was off duty, was driving his 1995 Mercury Tracer northbound on West Virginia Avenue, Northeast, with Ms. Smith-Haynie. As the officer neared the 1300 block of West Virginia Avenue, Northeast, he observed Mr. Brown walking southbound on the east sidewalk. Officer Ford parked his vehicle at the east curb near the intersection of West Virginia Avenue and Neal Street, Northeast, exited the vehicle and approached Mr. Brown. After a brief verbal confrontation, Officer Ford called out to a woman standing nearby, identified himself as a police officer and asked her to call the police. Mr. Brown stated that he did not want to go back to jail and then placed the backpack that he was carrying, on the ground and began swinging and kicking towards Officer Ford. Officer Ford attempted to keep Mr. Brown at bay by extending his hand forward, while backing southbound on the sidewalk towards Neal Street, Northeast, however Mr. Brown continued to press forward physically threatening the officer. As Officer Ford neared Neal Street, Northeast,

2

FORD, Edward
DDRO

he drew his service pistol. Officer Ford backed into Neal Street, Northeast, and he held his service pistol in both hands at his chest. It was then that Mr. Brown told Officer Ford that he was *"Prepared to meet his maker"* and then he lunged towards Officer Ford who discharged one (1) round from his departmentally issued Glock-17 service pistol, striking Mr. Brown in the upper right chest. When interviewed later, Officer Ford told investigators that he unintentionally fired his service pistol.

Mr. Brown was transported by District of Columbia Emergency Medical Services Medic Unit 3 to the Washington Hospital Center *Medstar Unit*. At 3:37 PM, Dr. Jack Sava of the hospital staff pronounced Mr. Brown dead. Mr. Brown's remains were transported to the Office of the Chief Medical Examiner, where Deputy Medical Examiner A. Wayne Williams performed a post mortem examination. Dr. Williams determined that Mr. Brown died from a single gunshot wound to the right chest that perforated the heart and ruled the death a homicide.

The UFRB concluded that Officer Ford used excessive force when he removed his issued service pistol from its holster. Although, Mr. Brown was moving toward Officer Ford, Mr. Brown was not armed. There were several alternatives available to Officer Ford including hand controls and retreat. Officer Ford, by pulling and pointing his services weapon, did not use the minimum amount of force necessary to complete his mission.

Officer Ford should never have stopped Mr. Brown. Officer Ford was told that Superintendent of Detectives Division investigators were handling his theft case. According to Sergeants Leslie Parsons Jr. and Colin Hall they both individually told Officer Ford to allow the Superintendent of Detectives Division investigators to handle the investigation, Officer Ford ignored these directives.

Upon reviewing the facts of this incident, and considering the guidelines set forth by the department, Second District Officer Ford fired one round from his departmental issued service pistols that fatally took affect. Based upon the Metropolitan Police Department's policy and procedures, it is the finding of the Use of Force Review Board that the discharge of the noted Officer service pistols be deemed not justified.

PETER NEWSHAM
ASSISTANT CHIEF OF POLICE
UFRB CHAIRMAN

**ATTACHMENTS**
(1) Investigation Report

3